[No. 21058–1–I.   Division One.   February 6, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY G. PETITCLERC, *Appellant.*

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Michael E. Rickert, Prosecuting Attorney,* and *K. Garl Long, Deputy,* for respondent.

SCHOLFIELD, J.—The defendant, Larry G. Petitclerc, appeals his conviction on count 1 of taking a motor vehicle without owner's permission. We affirm.

## FACTS

The following facts were stipulated to by the parties by written stipulations filed June 12 and June 16, 1987.

On March 12, 1987, Petitclerc was charged in juvenile court with one count of taking a motor vehicle and a warrant was issued for his arrest. On April 3, 1987, Petitclerc was arrested by Anacortes police, transported to the Anacortes police station, and read his constitutional rights. He waived his rights and admitted the theft, denying other car thefts. Petitclerc was then transported to juvenile detention.

Gray Foster, coordinator of the Office of Assigned Counsel, contacted Petitclerc there and informed him that a lawyer would be appointed and would be in touch with him. Starck M. Follis, an attorney in the public defender's office, was appointed and filed a notice of appearance in the superior court clerk's office and in the prosecuting attorney's office on April 3, 1987, probably in the midafternoon. The notice contained the sentence, "It is further requested that no law enforcement officials contact or question the above–named juvenile without the undersigned attorney being present."

On April 6, 1987, Petitclerc appeared in juvenile court and was advised of his rights regarding the March 12, 1987 arrest warrant. During this appearance, Petitclerc was

asked if he was going to hire an attorney. Petitclerc stated that he already had an attorney and had seen him once. Following this appearance, Officer Dodge of the Anacortes Police Department contacted Petitclerc in detention. It is undisputed that Dodge did not know that Petitclerc was represented by counsel. Dodge read Petitclerc his constitutional rights per *Miranda*.[1] Petitclerc waived his rights and incriminated himself in additional thefts. Petitclerc was then remanded from juvenile court jurisdiction and charged in superior court with two counts of taking a motor vehicle without the owner's permission. Follis is unsure whether he spoke to Petitclerc prior to Officer Dodge contacting him in detention.

Prior to trial, Petitclerc moved to suppress the custodial statements he made on April 3 and April 6, 1987. Following hearings on June 5 and June 19, 1987, the trial court concluded that Petitclerc knowingly, intelligently and voluntarily waived his right to remain silent and gave statements which were admissible against him and denied the motion to suppress. On June 19, 1987, Petitclerc entered a guilty plea to the crime charged in count 2 of the information. Also on this date, he waived his right to jury trial and, in a trial on stipulated facts, was found guilty of the offense charged in count 1. This appeal timely followed.

### RIGHT TO COUNSEL

The only issue in this case is whether the April 6, 1987, statement given by Petitclerc to Officer Dodge should have been suppressed. Petitclerc contends that the confession obtained from him by Officer Dodge was in violation of his Sixth Amendment right to counsel because his statement to the judge in court, combined with the notice of appearance filed by his attorney, was equivalent to a demand to speak through his attorney, and therefore any waiver was invalid.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

The Sixth Amendment right to counsel attaches when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment or preliminary hearing. *State v. Franklin,* 48 Wn. App. 61, 63, 737 P.2d 1047 (1987) (citing *Massiah v. United States,* 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964)). The right to counsel does not depend upon a request by the defendant, and the courts indulge in every reasonable presumption against waiver. *Brewer v. Williams,* 430 U.S. 387, 404, 51 L. Ed. 2d 424, 97 S. Ct. 1232 (1977).

In the present case, Petitclerc had been charged in juvenile court on March 12, 1987. Therefore, formal judicial proceedings had been initiated against Petitclerc, and his confession of April 6, 1987, relating to an uncharged crime, was made after his right to counsel had attached under the Sixth Amendment. The fact that the confession did not relate to the crime charged should not make any difference with regard to the attachment of Petitclerc's Sixth Amendment right to counsel. The Sixth Amendment guarantees an accused, who has been formally charged with a crime, the right to rely on counsel as a "medium" between himself and the State. *Michigan v. Jackson,* 475 U.S. 625, 632, 89 L. Ed. 2d 631, 106 S. Ct. 1404 (1986). This guaranty should apply with regard to a police–initiated interrogation that follows attachment of the Sixth Amendment right to counsel, no matter what the subject matter of the interrogation.

A critical fact in this case is that Petitclerc had counsel and had talked to counsel before he made incriminating statements to Officer Dodge on April 6, 1987. This fact distinguishes this case from the fact pattern in *Jackson,* where the defendants had "'requested counsel during their arraignments, but were not afforded an opportunity to consult with counsel before the police initiated further interrogations.'" *Jackson,* 475 U.S. at 626 (quoting *People v. Bladel,* 421 Mich. 39, 67–68, 365 N.W.2d 56, 69 (1984)). The Supreme Court opinion in *Jackson* makes it clear that the Court is addressing a case where a confession was

obtained before "counsel [had] been made available to the accused". *Jackson,* 475 U.S. at 628.

Since Petitclerc had counsel, the issue is what right, if any, was violated when Officer Dodge initiated a conversation with Petitclerc and in response to which Petitclerc admitted being involved in additional thefts without invoking any Fifth Amendment rights or making any claim for the presence or assistance of his counsel.

■ The record reflects that Officer Dodge not only advised Petitclerc of the six constitutional rights constituting the so-called *Miranda* rights, but that Petitclerc voluntarily signed a document acknowledging his understanding of those rights and expressly waiving the same.

In *State v. Jones,* 19 Wn. App. 850, 578 P.2d 71 (1978), Jones was interrogated after a lawyer contacted the police by telephone notifying them Jones' mother had retained him as counsel for Jones and requesting that Jones not be interrogated in his absence. Jones was not told a lawyer had been retained for him and had requested he not be interrogated. During his trial, an incriminating statement made during the interrogation was admitted, and he was convicted. This court reversed, holding (1) that the statement was a product of custodial interrogation and was not volunteered and (2) that the State had failed to show a valid waiver by Jones of his right to assistance of counsel, stating at page 853:

> When counsel expressly requests that his client not be questioned until counsel has conferred with him and police deliberately withhold this information, a defendant's waiver has not been knowingly and intelligently made.

*Jones* is not controlling here because Petitclerc knew he had an attorney and had actually conferred with him. It also should be kept in mind that Petitclerc signed a written waiver of his constitutional rights, and the trial court found on substantial evidence that his waiver was knowingly, intelligently and voluntarily made. Neither the state nor

federal constitutions prohibit state agents from communicating directly with an arrested person represented by counsel. *State v. Vidal,* 82 Wn.2d 74, 78, 508 P.2d 158 (1973); *State v. Stallworth,* 19 Wn. App. 728, 734, 577 P.2d 617 (1978).

In *State v. Riley,* 19 Wn. App. 289, 576 P.2d 1311 (1978), the defendant had counsel, had spoken with an intern from his attorney's office and had been advised of his rights. Upon being questioned by two detectives, he made incriminating statements. Although he knew he had counsel, like Petitclerc, he made the statements without requesting the presence of counsel. The trial court entered a finding that his statements were made voluntarily following a knowing and intelligent waiver of his rights.

Riley contended on appeal that it was improper for the detectives to interrogate him after he had consulted with counsel. We held at page 296:

> One who consents to be questioned without his attorney being present cannot attack any admissions on the basis of deprivation of his right to counsel.

From the foregoing authorities, we conclude that since Petitclerc had an attorney and had consulted with him prior to giving his statement to Officer Dodge, there was no violation of his right to counsel in taking the statement of April 6, 1987.

Petitclerc had been advised of his *Miranda* rights twice the same day the statement was taken and had voluntarily given Officer Dodge a written waiver of those rights. Included in the rights waived were his right to remain silent and his right to be represented by an attorney. There is no evidence of intimidation, deception, or coercion of any kind. Petitclerc simply elected to waive his right to remain silent and the right to consult further with his attorney or have his attorney present. The trial court having found that his waiver was knowingly, intelligently and voluntarily made, the statement of April 6, 1987, was properly admitted.

The language in the notice of appearance filed by Petit-clerc's attorney, requesting that "no law enforcement officials contact or question [Petitclerc] without [his attorney] being present", also does not invalidate Petitclerc's April 6, 1987, waiver of his right to counsel. When counsel is appointed and expressly objects to custodial interrogation of a defendant, these facts must be communicated to a defendant. *State v. Jones,* 19 Wn. App. at 854. However, just as a defendant may choose to ignore the advice of counsel and voluntarily communicate with law enforcement officers, the defendant may also choose to ignore his counsel's demand to be present during interrogation. *Jones,* 19 Wn. App. at 853. The fact that Petitclerc had conferred with his attorney before talking to Officer Dodge overcame whatever efficacy the request contained in the notice of appearance may have had.

The record is somewhat unclear as to whether Petitclerc's attorney advised him during their one conference not to talk with police officers. The attorney advised the court that his "usual practice" was to "instruct them to remain silent." Petitclerc's attorney had the opportunity to fully advise his client. That fact, coupled with Petitclerc's having been advised of his *Miranda* rights twice on April 6, 1987, fully supports the trial court's conclusion that his waiver was knowing and voluntary.

Judgment affirmed.

WEBSTER and PEKELIS, JJ., concur.