111 P.3d 1264 (2005)
STATE of Washington, Respondent,
v.
Alexander Leonard FOWLER, Appellant.
No. 31562-9-II.
Court of Appeals of Washington, Division 2.
May 24, 2005.
Patricia Anne Pethick, Attorney at Law, Tacoma, WA, Thomas Edward Doyle, Attorney at Law, Hansville, WA, for Appellant.
James C. Powers, Thurston County Prosecuting Attorney Office, Olympia, WA, for Respondent.
VAN DEREN, J.
¶ 1 A jury convicted Alexander L. Fowler of two counts of first degree incest, two counts of second degree incest, and one count of second degree rape. Fowler appeals the trial court's denial of his motion to suppress *1265 two tape-recorded telephone conversations between him and the victim. He argues that because the calls were recorded without his consent, the recordings violated his privacy rights under RCW 9.73.030(1)(a) and were inadmissible. He also contends that the trial court erroneously applied the "silver platter"[1] doctrine. Finding no error, we affirm.

FACTS

A. Background
¶ 2 Fowler, who lived with M.P.'s mother and her family in Washington State, began inappropriately touching M.P. when she was 12 years old. In May 1997, Fowler married M.P.'s mother after living with the family for many years. M.P. was 17 years old at the time of the marriage and became Fowler's stepdaughter. Fowler's inappropriate touching of M.P. escalated into sexual intercourse and oral sex after she became his stepdaughter.
¶ 3 In 2000, M.P. resisted Fowler's demand for sexual intercourse, but he held her down, straddled her waist, and penetrated her, despite her hitting him and crying. The family moved to Oregon soon after this event.
¶ 4 Fowler's sexual misconduct continued in Oregon. M.P. eventually left home to attend community college. When she returned home for a weekend in May 2002, Fowler had sexual contact with her again and later M.P. revealed Fowler's behavior to her mother. M.P.'s mother confronted Fowler and contacted Oregon authorities about M.P.'s disclosures. Soon after M.P.'s mother confronted Fowler, he left the home in Oregon and returned to Washington State.
¶ 5 In September 2002, Oregon State Police Detective Michael Wilson met with M.P. and her mother. As part of his investigation of the alleged sex offenses in Oregon, Detective Wilson asked M.P. to telephone Fowler from Oregon and tape-record their conversation. M.P. consented and made two telephone calls to Fowler in Washington.[2] Fowler did not know that the conversations were recorded. M.P. and Fowler discussed some details about Fowler's sexual contact and intercourse with M.P. in Washington during the course of their recorded conversations.
¶ 6 Detective Wilson then interviewed Fowler in Washington about M.P.'s allegations. Detective Wilson advised Fowler of his Miranda[3] rights before questioning him. Fowler denied many of M.P.'s allegations, but he admitted that he may have touched her inappropriately on occasion, especially when drinking. After Fowler made these statements, Detective Wilson informed him of the taped conversations. Fowler continued to deny M.P.'s allegations, but he briefly repeated that he may have acted inappropriately when drinking.
¶ 7 Detective Wilson eventually provided a copy of the two recorded conversations to law enforcement in Washington. In June 2003, the State of Washington charged Fowler with two counts of first degree incest, two counts of second degree incest, and one count of second degree rape.

B. Suppression Motion and Trial
¶ 8 Fowler moved to suppress the tape-recorded conversations, arguing that they were made without his consent, contrary to RCW 9.73.030(1)(a). The trial court ruled that chapter 9.73 RCW was inapplicable because M.P. lawfully recorded the two calls in Oregon for the sole purpose of assisting with the investigation of criminal allegations in Oregon. The court also found that Washington officials were not involved with or aware of the allegations or Oregon investigation when M.P. made the recordings. The court concluded that Detective Wilson properly followed Oregon's one-party consent law when he obtained the recordings without Fowler's consent.
*1266 ¶ 9 The court also entered the following conclusions of law:
3. The rule of law known as the "silver platter doctrine" is part of the law of the State of Washington and is applicable to the facts of this case. According to the "silver platter doctrine", when evidence results from a law enforcement investigative practice in another jurisdiction where that investigative practice is legal, but the same investigative practice would be illegal under Washington law, the evidence is still admissible in a Washington court provided that law enforcement in the other jurisdiction did not engage in the investigative practice as agents of a Washington law enforcement agency.
4. Because the recordings by the alleged victim were made in Oregon, at the instigation of an Oregon law enforcement officer conducting a criminal investigation within Oregon concerning an offense alleged to have been committed in Oregon, and were made in full conformity with Oregon law, and because there was no request, instigation or other involvement by a Washington law enforcement agency or other Washington official with regard to these recordings, the recordings are not rendered inadmissible at the trial of the above cause by the provisions of RCW 9.73.030, and will not be suppressed on that basis.
Clerk's Papers at 71-72.
¶ 10 M.P., M.P.'s mother, and Detective Wilson testified at trial. Fowler did not proffer any witnesses. The jury convicted Fowler as charged and he received concurrent standard range sentences.

ANALYSIS
¶ 11 Fowler contends that the trial court erred in admitting the tape-recorded conversations because he received the calls in Washington and they were recorded without his consent. He asserts that they violated his privacy rights under RCW 9.73.030(1)(a) and were inadmissible under RCW 9.73.050.[4] Similarly, Fowler briefly argues that the trial court erroneously applied the silver platter doctrine because the conversations occurred when he was in Washington.
¶ 12 The State responds that RCW 9.73.030(1)(a)'s privacy protections do not apply because Oregon's one-party consent law governs the legality of the two recordings. The State contends further that the trial court properly admitted the recordings under the silver platter doctrine because Oregon police lawfully made the recordings.[5]
¶ 13 We review a trial court's factual findings for substantial evidence and review the suppression order's conclusions of law de novo. State v. Duncan, 146 Wash.2d 166, 171, 43 P.3d 513 (2002); State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).

I. CHOICE OF LAW AND RCW 9.73.030(1)(A)'S INAPPLICABILITY
¶ 14 We first determine whether RCW 9.73.030(1)(a) applies under the facts here.
¶ 15 Violation of RCW 9.73.030(1)(a) is a gross misdemeanor. RCW 9.73.030(1)(a) states:
(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:
(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining *1267 the consent of all the participants in the communication.
¶ 16 Fowler argues that RCW 9.73.030(1)(a)'s plain language of "between points within or without the state" demonstrates that recording M.P.'s calls from Oregon to him in Washington without his consent violated RCW 9.73.030(1)(a). But Fowler ignores the significance of the fact that M.P. recorded the calls in Oregon.
¶ 17 We engage in a choice of law analysis because Oregon's one-party consent statute for recording a telephone conversation conflicts with RCW 9.73.030(1)(a)'s two-party consent requirement. Seizer v. Sessions, 132 Wash.2d 642, 648, 940 P.2d 261 (1997).
¶ 18 Our Supreme Court has held that "courts determining the validity of a telephone interception have looked to the law of the jurisdiction in which the interception  or the recording  occurred in order to determine the lawfulness of the interception." Kadoranian v. Bellingham Police Dep't, 119 Wash.2d 178, 186, 829 P.2d 1061 (1992) (citing, inter alia, State v. Fleming, 91 Or.App. 394, 399, 755 P.2d 725 (1988), which held that Oregon's one-party consent statute at issue here governed a call recorded in Oregon to a Washington defendant).[6]
¶ 19 Here, the Oregon one-party consent statute applies to the recorded conversations between M.P. and Fowler because it is undisputed that M.P. recorded them in Oregon as part of an investigation of her allegations of Fowler's sexual misconduct in Oregon. Thus, under Oregon's one-party consent law, the Oregon recordings were legal. The trial court did not err in determining that RCW 9.73.030(1)(a) did not apply.
¶ 20 Fowler's remaining arguments regarding RCW 9.73.030(1)(a)'s applicability are unpersuasive. He argues that RCW 9.73.030(1)(a)'s privacy protections automatically apply because he was in Washington when M.P. called him; however, during oral argument, Fowler confirmed that he was not asserting that Detective Wilson's conduct violated any Washington laws. This is consistent with the State's argument that "it was not the intent of the legislature to make it a crime in Washington [under RCW 9.73.030(1)(a)] for a person to record such a call in Oregon, made pursuant to a criminal investigation in Oregon, and in full compliance with Oregon law."[7] Br. of Resp't at 23. Indeed, as our Supreme Court has stated, "Washington has no criminal jurisdiction over actions having no effect in this state." State v. Brown, 132 Wash.2d 529, 590, 940 P.2d 546 (1997) (quoting State v. Mayes, 20 Wash.App. 184, 193, 579 P.2d 999 (1978)).
¶ 21 Fowler's arguments also fail to meaningfully discuss Washington case law. In Mayes, a California police officer testified in Washington regarding the legal interception of a call in California. 20 Wash.App. at 193-94, 579 P.2d 999. Chapter 9.73 RCW was inapplicable because "[1] the interceptions took place in California, [2] were principally to aid California police, and [3] were not used to further any criminal activity in the state of Washington." Mayes, 20 Wash.App. at 193, 579 P.2d 999. Here, it is undisputed that M.P.'s calls to Fowler satisfied the second and third of these criteria relied upon. And although Fowler received M.P.'s calls in Washington, this is not dispositive because the calls were legally recorded in Oregon.
¶ 22 Fowler relies on State v. Williams to argue that the recordings violated chapter 9.73 RCW and thus are inadmissible. 94 Wash.2d 531, 617 P.2d 1012 (1980). But in Williams, the recordings were suppressed because federal agents recorded calls in Washington under a federal wiretap law that did not comply with chapter 9.73 RCW's provisions in order to assist a Washington State prosecution. 94 Wash.2d at 534, 536, 617 P.2d 1012. Here, the two telephone calls complied with Oregon law for the purpose of investigating alleged crimes in Oregon.
*1268 ¶ 23 At oral argument, Fowler asserted that State v. Christensen compels us to hold that chapter 9.73 RCW strictly protects the privacy of all individuals in Washington, even in communications that occur within the family home. 153 Wash.2d 186, 192-93, 102 P.3d 789 (2004). But Fowler's reliance on Christensen is misplaced. In Christensen, the mother intercepted her daughter's telephone conversation with her boyfriend in Washington in order to assist Washington police with a criminal investigation of the boyfriend who was also in Washington. 153 Wash.2d at 190-91, 102 P.3d 789. Neither the daughter nor the boyfriend were aware of or consented to her interception of the call. Christensen, 153 Wash.2d at 190-91, 102 P.3d 789. Washington's privacy laws clearly applied, barring admission of the recordings under chapter 9.73 RCW. Christensen, 153 Wash.2d at 192, 102 P.3d 789.
¶ 24 Here, the court did not err in finding that RCW 9.73.030(1)(a) did not apply and in admitting the two recorded Oregon conversations between Fowler and M.P. Furthermore, assuming arguendo that the trial court erred in admitting the two recordings, it is not prejudicial here. See State v. Porter, 98 Wash.App. 631, 638, 990 P.2d 460 (1999) ("Failure to suppress evidence obtained in violation of the privacy act is prejudicial unless, within reasonable probability, the erroneous admission of the evidence did not materially affect the outcome of the trial."). The parties do not discuss the significance of the taped conversations, except that Fowler broadly asserts that any error requires that we vacate his convictions. But given M.P.'s testimony about the actual sexual contact between herself and Fowler, and her mother's testimony about M.P.'s disclosure as well as her confrontation of Fowler and his departure from the home, any error is harmless.

II. SILVER PLATTER DOCTRINE
¶ 25 Fowler argues that the court erred in relying on the silver platter doctrine to admit the two recordings.
¶ 26 The silver platter doctrine applies when (1) the foreign jurisdiction lawfully obtained evidence; and (2) the forum state's officers did not act as agents or cooperate or assist the foreign jurisdiction in any way. Brown, 132 Wash.2d at 587-88, 940 P.2d 546. If both elements are satisfied, the forum state can admit evidence obtained by the foreign jurisdiction. Brown, 132 Wash.2d at 585, 940 P.2d 546 (applying the silver platter doctrine and framing the issue as "whether evidence lawfully obtained by police authorities in California should be suppressed in a criminal case in Washington State if similar action by Washington authorities would be in violation of Washington law.").
¶ 27 Here, Fowler does not dispute the court's findings that (1) M.P.'s two telephone calls to Fowler complied with Oregon's one-party consent law. Indeed, at the suppression hearing, Fowler's counsel agreed with the State that Washington authorities were not aware of Oregon's efforts until Detective Wilson contacted them and provided a copy of the tape-recorded conversations between M.P. and Fowler; and (2) no Washington State police officer instigated or had knowledge of Oregon's investigation of Fowler for criminal conduct alleged to have occurred in Oregon.
¶ 28 Fowler does not persuasively argue how the trial court erred in applying these facts under the silver platter doctrine. Instead, Fowler attempts to limit Brown's holding to RCW 9.73.090, which provides certain exceptions to the Act, including exceptions for police officers. But Brown applied this section in the context of the entire Privacy Act. 132 Wash.2d at 585-86, 940 P.2d 546. Fowler also attempts to distinguish Brown in that he received calls in Washington, where-as Brown's recorded statements to police occurred in California, where they were legal without Brown's consent. 132 Wash.2d at 584, 940 P.2d 546. But again, Fowler ignores the fact that Oregon's one-party consent law, not RCW 9.73.030(1)(a), governs the legality of the Oregon recordings under the facts here.
¶ 29 Given the trial court's undisputed factual findings, coupled with RCW 9.73.030(1)(a)'s inapplicability, the trial court did not err in applying the silver platter doctrine in order to admit the two recorded *1269 Oregon telephone conversations between M.P. and Fowler.
¶ 30 We affirm.
We concur: ARMSTRONG, P.J., and HUNT, J.
NOTES
[1] The silver platter doctrine applies when (1) the foreign jurisdiction lawfully obtained evidence; and (2) the forum state's officers did not act as agents or cooperate or assist the foreign jurisdiction in any way. State v. Brown, 132 Wash.2d 529, 587-88, 940 P.2d 546 (1997).
[2] Because significant portions of M.P.'s first call to Fowler contained static and were not discernible, Detective Wilson requested that M.P. call a second time.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Although briefly implied in the trial court's ruling, the parties do not discuss constitutional privacy rights. Thus, we do not address this issue.
[5] The State emphasizes that Fowler has waived appellate review of his challenge to the CrR 3.6's findings and conclusions because his brief failed to adequately address them. But the facts are generally undisputed and Fowler's brief adequately argues why the trial court's legal conclusions were erroneous. Thus, the State's argument here is unpersuasive.
[6] See also State v. Matthews, 101 Wash.App. 894, 899, 5 P.3d 1273 (2000) (emphasizing that "in answering the argument that the interception violated Canadian law, the [Kadoranian] court said that `[i]nterceptions and recordings occur where made.' ... Thus, because the interception and recording took place in Bellingham, the legality of the process was tested against Washington law, not Canadian.") (emphasis added).
[7] Oregon did not file charges against Fowler for reasons that the record does not reveal.